DAVIS v. COMMERCIAL STANDARD INS. CO.

No. 13670.

Court of Civil Appeals of Texas. Dallas.

March 22, 1946.

Rehearing Denied April 19, 1946.

White & Yarborough and W. E. Johnson, all of Dallas, for appellant.

Ralph W. Malone and Curtis White, both of Dallas, for appellee.

YOUNG, Justice.

The suit was to set aside and cancel a compromise settlement agreement made between appellee insurer and Davis upon allegations that his signature had been procured by fraudulent statements on part of the company adjuster and its doctor. Following a jury trial and verdict upon special issues, plaintiff's motion for judgment was overruled, that of appellee for judgment notwithstanding the verdict sustained, which adverse rulings and court action have been brought up for review.

Petitioner alleged that on February 8, 1944, in course of employment, his right eye was injured by a flying bit of steel while grinding the end of a bolt; and a compromise settlement consummated March 20, was approved tentatively the 22nd and finally March 29th by the Accident Board. Condition of said eye later deteriorated and it was removed about June 20, 1944. The agreement was for $160 in addition to medical bills.

Plaintiff's material allegations of fraud and defenses thereto are sufficiently reflected in the jury issues and answers, which will be summarized and numbered as in the court's charge: (1) W. A. Davis sustained an accidental injury to his right eye on or about February 8, 1944; (2) which was in course of employment with Davis Brothers; (3) defendant's claim agent Jordan, prior to the signing by W. A. Davis of the settlement agreement, told Davis that his eye was well and that he had no permanent injury thereto; (4) such statement by Jordan was false; (5) was a material inducement to Davis in making the compromise settlement that he did make; (6) and but for the making of such statement by Jordan, and reliance thereon by Davis as being true, plaintiff would not have executed the instruments in question; (7) about March 20, 1944, prior to signing the compromise settlement, Dr. Jones told W. A. Davis that his eye was well and that he had no permanent injury thereto; (8) which statement on part of Dr. Jones was false; (9) was a material inducement to Davis in making the settlement; (10) Davis *did not* rely on such statement of Dr. Jones in executing the instruments; (11) (inquiring if Dr. Jones at the time was acting for and on behalf of defendant) submitted conditionally and not answered; (12) defendant's claim agent, before the March settlement, told Davis that he had talked to Dr. Jones and that Dr. Jones told him (Jordan) that his (W. A. Davis's) eye was well and that he (Davis) had no permanent injury thereto; (13) which statement was a material inducement to Davis in making the settlement; (14) but for such statement (referred to in issue 12) Davis would not have signed the settlement agreement; (15) as a natural result of the injuries received by Davis (of February 1944), he suffered loss of his right eye; (16) condition of plaintiff's right eye after March 20, 1944, was not solely caused by trachoma or injury sustained subsequent to February 8, 1944; (17a) plaintiff Davis had a telephone conversation with Dr. Jones on morning of March 20, 1944, prior to signing the settlement agreement; (17b) Dr. Jones in such telephone conversation did not tell plaintiff that his disability, sustained February

602

8, by getting a foreign substance in his eye, had cleared up, but that his eye was not well; (18) the condition for which Davis was placed in the hospital by Dr. Jones about June 1, 1944, was not due solely to causes unconnected with the accident of February 8, 1944; (19) cause of the disability suffered by Davis since February 8, 1944, *was not* uncertain, indefinite and incapable of being satisfactorily established; (20) the disability which plaintiff Davis may have sustained on February 8, 1944, had not cleared up by March 20, 1944.

The substance of plaintiff's points of appeal should next be stated. Various errors of the trial court are charged: (1) In refusing to enter judgment setting aside the compromise settlement upon jury findings of false statements made to plaintiff to the effect that his eye was well and that it had no permanent injury; and, conversely, in entering defendant's judgment notwithstanding affirmative answers to fraud issues numbered 3, 4, 5, 6, 13 and 14; (2) refusal to enter judgment for plaintiff on jury finding that the cause of plaintiff's disability was not uncertain, indefinite and incapable of being satisfactorily established; (3) plaintiff's motion for directed verdict should have been sustained because, from undisputed evidence, defendant had itself breached and repudiated the settlement by failure to pay medical bills; (4) error in excluding plaintiff's testimony that Jordan, the adjuster, had told him that Dr. Jones was the company specialist; (5) ruling out further evidence that Dr. Jones was the physician of defendant; (6) error in sustaining exceptions to plaintiff's trial amendment alleging a violation of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., in that (a) the compromise agreement was made and consummated before being approved by the Industrial Accident Board; and (b) plaintiff's affidavit was not subscribed and sworn to on March 20, 1944, before the notary whose name appeared thereon; (7) the court's refusal to permit plaintiff's introduction as evidence an admission contained in defendant's abandoned answer, though sworn to, which pleading, in connection with other evidence, tended to show that it had sent plaintiff to Dr. Jones for treatment; (8)

error in overruling plaintiff's motion to strike defendant's amended answer and his further request to withdraw announcement of ready and declare a mistrial in the same connection.

The following narrative of facts is here pertinent, additional to above jury findings: Plaintiff first went to see Dr. Wilkinson for treatment of injured eye, then changing over to Dr. Guy Jones on suggestion of his son, J. C. Davis. After regular visits to Dr. Jones, he was told by the latter about March 15 not to come back any more, that his eye was "okay"; plaintiff thereupon proceeded to get in touch with defendant through the Roy Shelton Insurance agency. Mr. Jordan then came to see plaintiff, taking a statement. On Monday thereafter (March 20), the settlement in question was made; Jordan coming out with necessary papers, inclusive of affidavit for claimant's signature and reports from both physicians. During the ensuing conversation, as plaintiff testified, Jordan told him that his eye was well and that he (Davis) would have no permanent injury. The adjuster left all papers with plaintiff and went away; plaintiff narrating that he did not read them before signing; instead, that he 'phoned Dr. Jones for verification as to condition of right eye, relevant testimony of claimant being quoted:

"Q. What did Dr. Jones tell you, if anything, with reference to whether your eye was all right and you would have no permanent injury? A. He did; he said it was okay. I told him the insurance adjuster was out there wanting to settle this case and pay me compensation, and that he had told me you told him, that is the doctor had told him that my eye was okay, and I wanted to know if that was true, if he told him that, and he said, 'Yes,' the same thing as I told you. He said 'Your eye is okay.' He said, 'Go ahead and settle.'

"Q. Did he tell you it would be all right to go ahead and settle? A. Yes sir.

"Q. Did you sign the papers before Mr. Jordan told you that and before the doctor told you that? A. No sir.

"Q. Would you have signed the agreement for $160 if the doctor and Mr. Jordan

hadn't made those statements to you? A. Absolutely not.

"Q. Did you believe those statements that your eye was all right, and that you would have no permanent injury? A. Naturally, I took the doctor's word and confirmed by Mr. Jordan."

Referring to Jordan, witness stated:

"Q. And he explained to you he couldn't handle this matter in any other way than to reduce it to writing and send it to Austin for approval? A. Yes sir. * * *

"Q. When Mr. Jordan handed you these papers and asked you to sign them you signed them knowing they were going to be sent to Austin to be passed on by the Industrial Accident Board. Isn't that correct? A. Yes sir. * * *

"Q. Your contention is that Mr. Jordan told you that your eye was okay, and the doctor said it was okay, and because of that you signed these papers? A. Yes sir, that's right.

"Q. Isn't it a fact Mr. Jordan told you out there before these papers were signed that the insurance company's position was that your trouble was an old trachoma, a diseased condition instead of an accident? A. Yes sir, and I laughed at him."

■ At this point, plaintiff's three sets of issues and jury answers relative to fraud in procurement of the settlement in question should be given careful analysis. The fraudulent representations there chargeable to Jordan and Dr. Jones are seen to be merely expressive of their judgment and opinion concerning the extent of plaintiff's injuries; and actionable only if consistent with the following rule: "If the representation is as to a matter not equally open to both parties it may be said to be a statement of fact as such; but if it is as to a matter that rests merely in the judgment of the person making it, and the means of deriving information upon which a fair judgment can be predicated are equally open to both parties, and there is no artifice or fraud used to pervent the person to be affected thereby from making an examination and forming a judgment in reference to the matter for himself, the representation is a mere expression of opinion." 1

Black on Rescission and Cancellation, sec. 77, Huffmaster v. Toland, Tex.Civ.App., 250 S.W. 468; Texas Farm Bureau Cotton Ass'n v. Craddock, Tex.Civ.App., 285 S.W. 949, writ refused; Wilson v. Jones, Tex. Com.App., 45 S.W.2d 572. Within the rule quoted are statements of physicians relative to the patient's physical condition, on which the latter has a right to rely; and regarded as representations of fact, the subject matter obviously not being equally open to both parties. 20 Tex.Jur., sec. 12, p. 24; Curtiss & Co. v. White, Tex.Civ.App., 90 S.W.2d 1095; Duncan v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 105 S.W.2d 403. But as between laymen, whose information with respect to a particular matter is equal, an opinion or utterance to be actionable must include the further element of bad faith. "Thus redress may be had for the dishonest expression of an opinion or belief contrary to that really entertained by the speaker." 37 C.J.S., Fraud, § 12, p. 237; Texas Farm Bureau, etc., v. Craddock, supra; Harris v. Sanderson, Tex.Civ.App., 178 S.W.2d 315.

■ The jury found in answer to issue 10 that plaintiff *did not* rely on the statement of Dr. Jones, hence component findings 7, 8 and 9 must disregarded.

■ Likewise, jury findings 12, 13 and 14 cannot be availed of as a basis for setting aside the agreement of compromise. They are to the effect that plaintiff would not have settled his claim but for the statement of Jordan, adjuster, that he had talked with Dr. Jones, who had stated that plaintiff's eye was well and that he, Davis, would have no permanent injury. However, prior to the settlement, plaintiff himself had telephoned Dr. Jones, receiving the same information embodied in said issues; finding No. 10 being that plaintiff did not rely on the statement so directly made. In such a situation, a repetition by the adjuster of the untrue statement attributed to Dr. Jones cannot be made the basis of fraud, absent aforesaid element of bad faith. We quote from Indemnity Ins. Co. of North America v. Weeks, Tex.Civ.App., 75 S.W.2d 925, 927, involving a similar contention: "While it is true that Berger told appellee that Dr. Long had advised

him that appellee's physical condition was not the result of an injury, and that appellee believed that statement and relied thereon and was induced thereby to sign the compromise agreement, the undisputed facts are that Dr. Long made that very representation to Berger. There was no allegation that Berger knew that Dr. Long's statement to him was false and, with that information, made the statement to appellee fraudulently to induce him to execute the contract. No such issue was submitted to the jury, though appellant duly requested the submission of the following issue, which was refused by the court: '2. If you have answered Issue No. 13-C "Yes" (that is, that appellee relied upon Berger's statement as to what Dr. Long had said), then answer this: Do you find from a preponderance of the evidence that Berger made said statement with intent to deceive? * * *.'"

■ Obviously, a similar construction must be given plaintiff's first set of issues (3 to 6) that the claim agent, before the papers were signed, told Davis that his eye was well and without permanent damage. Plaintiff's testimony that he relied on above statement because he "figured that Jordan had had experience," is referable to no more than Jordan's own testimony of his training and experience as an adjuster of claims. In short, the record is wholly devoid of evidence that Jordan had any knowledge superior to that of Davis with respect to the nature and extent of the latter's injury; on the other hand, the technical information available to each, was from the doctors already named. It would thus appear that, however positively asserted, Jordan's statement was tantamount merely to his opinion and belief; not actionable, unless dishonestly expressed and thereby converted into a fraudulent representation, his good faith being presumed in absence of a finding to the contrary. Harris v. Sanderson, supra.

On the points under discussion, appellant cites Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464; Duncan v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 105 S.W.2d 403; and Jones v. Traders & General Ins. Co., Tex.Civ. App., 188 S.W.2d 739. In the cases first cited, an opinion of the company doctor was relied on by the claimant; said medical opinion also being made use of by the company representative in obtaining the release. Here, there was nothing to indicate that the statement of Jordan, the adjuster, was anything more than his opinion; no finding that plaintiff relied on the representation of Dr. Jones, or that the latter was acting for and on behalf of defendant. In Jones v. Traders & General Ins. Co., supra, to the compromise agreement of insurer was attached a statement of Dr. Egdorf to the effect that claimant's eye was well, which statement was read and relied on; the Eastland Court holding that the company having made use of the report to deceive Jones, Egdorf became defendant's agent insofar as the statement was concerned. Here, appellant does not complain of the statement of Dr. Jones attached to the settlement agreement, which he did not read, though having opportunity to do so. This statement of Dr. Jones in writing, dated March 18, says in part: "He (Davis) has been under treatment but the eye is not well. * * * Diagnosis and opinion: In view of the history of his lids having been operated on some years past, the appearance of them at this time and the scarring on the tarsal plate a diagnosis is made of old trachoma. And opinion is that this is a 'flare up' perhaps initiated by foreign bodies in the eye." Appellant merely complains of the oral statement, allegedly made over the telephone by Dr. Jones on day of settlement, that the eye was well; and the substance of issues 12 to 14 involved a repetition of such statement by the adjuster to Davis; the jury having found, however (issue 10), that plaintiff did not rely thereon, when first made to him by the doctor.

■ Art. 8307, R.S., sec. 12, authorizes the Industrial Accident Board to approve any compromise between the parties "Where the liability of the association or the extent of the injury of the employé is uncertain, indefinite or incapable of being satisfactorily established." The jury answered "No" to issue 19, reading: "Do you find from a preponderance of the evidence, that the cause of the disability, if any, which the plaintiff, W. A. Davis, has

suffered since February 8, 1944, was uncertain, indefinite, and incapable of being satisfactorily established?" This issue was inserted in the charge apparently at the request of defendant, but its materiality is obscure. The negative answer thereto, however, is seized upon by appellant to demonstrate lack of jurisdiction by the Board to approve the settlement ab initio. It is argued that defendant invoked jurisdiction of the Board by claiming a doubtful liability; that under the medical reports of both Wilkinson and Jones accompanying the agreement, the company liability was undisputed, with result that the claim was one the Board had no right to approve. We deem the point untenable. A bona fide disagreement is recited by the papers of settlement as presented to the Board, both in matter of liability and extent of injury. Plaintiff's allegations seeking cancellation of the compromise, charged fraudulent representations entirely aside from the particular settlement agreement; and if extrinsic fraud be not established, the parties are estopped by their own contract to contend that the claim was not properly one for compromise. Moreover, it is the Board's province to determine whether liability of the association or extent of injury is uncertain, indefinite, or incapable of being satisfactorily established; and, in absence of fraud, accident or mistake, where the Board has impliedly so found by approval of a compromise settlement, its jurisdiction cannot be ousted by a subsequent jury finding to the contrary. Quite in point is Estes v. Hartford Accident & Indemnity Co., Tex.Civ.App., 46 S. W.2d 413, 416, viz.: "The trial court nor this court does not know what evidence was offered before the board when the settlement was before the board other than the report of the doctors; such report, if no other evidence was offered, was sufficient to satisfy the board that the extent of appellant's injury was uncertain, indefinite, or incapable of being satisfactorily established, as the parties agreed in their settlement agreement submitted was the case. Our courts have held that the award of the board has the force of a judgment, and is binding on all parties, unless and until legally set aside."

Appellant further seeks cancellation of the settlement agreement in allegations that defendant had breached, repudiated, and abandoned same by failing to pay medical bills, tendering back the $160 paid; defendant pleading in reply that it had never received bills from either Wilkinson or Jones, but was ready, willing and able to pay all agreed sums upon presentation. Dr. Wilkinson stated on the trial that his account of $120 for treatment of plaintiff's eye had not been paid. There was no testimony that appellee had refused to pay the bills or that it had ever received from the doctors a statement of amounts due; or that appellant had ever demanded or sought payment thereof. "An agreement and settlement by the payment of a reasonable sum, when approved by the Industrial Accident Board, have the same force and effect as a judgment and are binding on all parties unless in some way legally set aside." 45 T.J., sec. 237, p. 701; Indemnity Ins. Co. of North America v. Hare, Tex.Civ.App., 107 S.W.2d 739, writ refused. Accordingly no reason is perceived why it cannot be enforced as such in an action for damages or specific performance. Furthermore, mere breach of a contract will not ordinarily give rise to an action of rescission, especially so, where, as here, there is an absence of pleading or proof that when the company agreed to pay medical bills it had no intention of performance. 7 T.J., sec. 19, p. 911. In Federal Surety Co. v. Blackwood, Tex.Civ.App., 46 S.W.2d 1062—a suit to set aside a compromise settlement on the same ground—the cause was reversed because of absence of such fraudulent intent, citing Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am.St.Rep. 39.

Exceptions were sustained to plaintiff's trial amendment which charged invalidity of settlement papers for irregularities. Though plaintiff had signed an undated settlement receipt, and his written statement bore a defect of acknowledgment, the compromise had been reviewed and given final approval by the Board. The parties were accordingly bound thereby unless cancelled on equitable grounds, 45 T.J., sec. 240, p. 705; illustrated here

by allegations of fraud entirely aside from the papers of settlement. And independently of fraud, accident or mistake, we do not think the Board's judgment can be thus subjected to collateral attack; Vestal v. Texas Employers' Ins. Ass'n, Tex.Com. App., 285 S.W. 1041; Estes v. Hartford Acc. & Ind. Co., supra.

 Appellant's several points relating to the court's exclusion of evidence will be briefly considered: (1) The rejection of appellant's testimony that "Mr. Jordan said Dr. Jones was their doctor" was not error. The quoted statement or admission undoubtedly involved a question of law and was inadmissible under the familiar principle " * * * * that no witness will be permitted to testify to a legal conclusion from facts given either by himself or testified to by another," Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L. R.A. 64; National Union Fire Ins. Co. v. Richards, Tex.Civ.App., 290 S.W. 912. (2) Appellant's counsel, seeking to establish agency on part of Dr. Jones in making the oral statements attributed to him, asked such witness this question: "Did you ever treat anybody for this Company?" The bill of exceptions discloses that Dr. Jones would have answered "Yes"; that he had done so over a period of years, had been paid therefor, making reports to the Company. The testimony was properly excluded. "It is a general rule of evidence that similar transactions of different parties may not be shown to prove the transaction in controversy, * *. *." 2 T.J., sec. 114, p. 512; Tull v. Turley, Tex.Civ. App., 36 S.W.2d 1101.

 The court did not err in refusing to permit introduction in evidence by plaintiff of a claimed admission in defendant's abandoned answer relating to Dr. Jones. Defense allegations in question were preceded by a general denial. Eureka Security Fire & Marine Ins. Co. v. De-Ross, Tex.Civ.App., 62 S.W.2d 226. Appellant's supporting authority (Houston, E. & W. T. Ry. Co. v. DeWalt, 96 Tex. 121, 70 S.W. 531, 97 Am.St.Rep. 877) is not deemed in point on the ruling made, agency or not of Dr. Jones in the instant case being "otherwise put in issue." Moreover, the court's above rulings on evidence, if error, were harmless, because of the jury finding (issue 10) that appellant did not rely on what Dr. Jones had said.

Points 11 and 12 have been duly considered, but are overruled without further discussion. No reversible error appearing herein, judgment of the trial court must be affirmed.

BOND, C. J., not sitting.

On Rehearing.

Complaint is made that in our summary of the jury findings, issue No. 10 and answer are incorrectly and insufficiently stated. As curative of any inaccuracy, the particular issue is quoted in full: "Do you find from a preponderance of the evidence that but for the making of said statement by Dr. Jones to the said W. A. Davis, and his reliance thereon as being true, if he did rely thereon, the said W. A. Davis would not have executed the instruments that have been introduced in evidence before you? Answer 'yes' or 'no.' Answer: 'No.' "

Otherwise, appellant's motion for rehearing is overruled.