### LATTA v. TEXAS EMPLOYERS' INS. ASS'N.

No. 9990.

Court of Civil Appeals of Texas.
Austin.

Nov. 7, 1951.

Rehearing Denied Nov. 28, 1951.

Adams, Browne & Sample, Ernest J. Browne, Beaumont, for appellant.

Cecil, Keith & Mehaffy and Jas. W. Mehaffy, Beaumont, for appellee.

HUGHES, Justice.

This is a Workmen's Compensation case in which a summary judgment was rendered for the alleged insurer, Texas Employers' Insurance Association. Appellant, J. S. Latta, alleged himself to be the insured under a policy issued by such association to his employer, Carpenter Production Company, and that he was injured while "* * in the course of his employment with said employer and while he was performing the usual tasks of such employer in such employment * * *"

Appellee Insurance Company filed a motion for summary judgment in which it admitted that it had issued a Workmen's Compensation Insurance policy to the Carpenter Production Company. It pleaded, however, that appellant was not, at the time of his injury, an employee of Carpenter Production Company, but was, at such time, an employee of "a third party, to-wit, Fralise Farms, Inc., a completely separate, entity, connected with Carpenter Production Company only in the sense that some of the stockholders of Fralise Farms are also stockholders of Carpenter Production Company."

Attached to this motion was the affidavit of Ray Edmondson, the material portion of which we quote:

"My name is Ray Edmondson and I reside in Sour Lake Hardin County, Texas. I am Secretary-Treasurer of Fralise Farms, Inc., and I am also employed as a bookkeeper for Carpenter Production Company. * * *

"I have been employed as a bookkeeper for Carpenter Production since 1946. I know J. S. Latta. In my position as bookkeeper for Carpenter Production Company, I am familiar with the employees of that

company, and Mr. Latta has never been employed by Carpenter Production Company.

"Fralise Farms, Inc., is a Texas corporation. * * * It * * * was incorporated in the summer of 1947. Fralise Farms is engaged in the business of rice farming, and owns some twenty-nine hundred acres of land near Sour Lake, Texas. In my position as Secretary-Treasurer of the company, I employed Mr. Latta to work for Fralise Farms, Inc. Fralise Farms has a contract with Mr. Nolte and Mr. McDermott, who farm the land belonging to the corporation. These men furnish the labor directly connected with the farming of rice, as well as the farming equipment. Fralise Farms, under the arrangement with Nolte and McDermott, furnishes seed, water, fertilizer and the land itself, and also furnishes the labor to perform clearing operations, fencing, and also the labor incident to the items Fralise Farms is to furnish under the contract. Most of the labor furnished by Fralise Farms consisted of the construction of canals, roads and flumes.

"My connection with Carpenter Production Company is merely as an employee. I own no stock in that company and do not hold any office in the company. Carpenter Production Company is in business of producing crude oil. I have no authority to employ anyone for Carpenter Production Company, and I have never hired anyone for that company.

"From time to time during the slack period on the farm, Fralise Farms contracts to do work on oil leases in Sour Lake. Fralise Farms enters into this type of contract with many oil producing companies. Under the customary arrangement, Fralise Farms, which owns a caterpillar tractor, would enter into a contract with an oil company, under the terms of which Fralise Farms would rent the tractor and an operator to perform a certain job. Mr. Latta would frequently do this type of work, and after he had performed this work, he would turn in his time, and I, as Secretary-Treasurer of the company, would in turn bill that person or company for the service, and payment would be made to Fralise

Farms. My records show that this type of arrangement was had with Cecil Oil Corporation, W. F. Newton, the Texas Company, Carpenter Production Company, Slatex Well Service Company, Cecil-Hagan, and perhaps others.

"I am familiar with the type of work which Mr. Latta was doing at the time he alleges he was injured. This was work for Fralise Farms, Inc. and Carpenter Production Company had no connection with it whatsoever.

"* * * the only person who owns stock in both Fralise Farms and Carpenter Production Company is Mr. F. H. Carpenter, who is a majority stockholder of Fralise Farms, Inc., but a minority stockholder of Carpenter Production Company."

Appellant replied to this motion for summary judgment by pleading that his status as an employee of Carpenter Production Company was established conclusively by the deposition evidence of himself and Mr. Edmondson, or in the alternative that such evidence raised a fact issue concerning the same.

We now set out the substance of the material evidence introduced on the motion for summary judgment.

Appellant testified that on the date he was injured he was working for the Carpenter Production Company; that he was hired at the office of the Production Company by Ray Edmondson who was supposed to be its Superintendent and that Edmondson paid and told him what to do. He testified that he operated a bulldozer, worked in oil fields and dug ditches, hauled pipe and helped move rigs.

Appellant was paid by check, delivered at the office of Carpenter Production Company but the checks were all made "on Fralise Farms."

As to what he was doing at the time of his injury, appellant testified:

"Q. On the day you were hurt, where were you, out in the oil field working? A. No, sir. I was doing construction work, out in the field.

"Q. You mean oil field construction work or construction work in connection

with rice farming? A. I don't know what you call it. It was hauling cement and gravel and building forms for a pipe.

"Q. For a pipe? A. Yes, sir.

"Q. Do you know what that pipe was to be used for? A. Yes, sir, irrigation purposes.

"Q. Irrigation purposes in connection with rice farming, is that right? A. Well, I guess you would call it that.

"Q. Well, what were they going to irrigate? A. Rice.

"Q. Who was giving you your orders that day? A. I got my orders from Mr. Edmondson."

He had been working on this particular job about one week before his injury.

Mr. Edmondson's testimony was not at variance with his affidavit, the substance of which is copied above.

The insurance policy involved was not offered in evidence.

The question for our decision is whether or not this evidence raises a genuine issue of fact as to appellant being employed by Carpenter Production Company at the time of his injury.

The trial court, after considering the affidavit of Mr. Edmondson and the testimony set out above, concluded that there was no such issue and rendered judgment for appellee.

Both parties rely upon the decision of the Commission of Appeals in Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W. 2d 97, 99, as nullifying, respectively, all statements that appellant did or did not work for Carpenter Production Company. The court in that opinion held that such testimony did not amount to any evidence at all saying: "They were but bare conclusions and therefore incompetent, and the fact that they were admitted without objection adds nothing to their probative force."

We may then, for this opinion at least, disregard such conflicting statements of the witnesses on this issue.

For appellant the salient facts are that he was employed and paid at the office of the Carpenter Production Company by Mr. Edmondson whom he supposed to be a company superintendent and from whom he received his orders.

For appellee it is shown that appellant was mistaken in believing Mr. Edmondson to be a Carpenter superintendent. He was a Carpenter bookkeeper. He was a Fralise Company director. The first company was in the oil business, the other in the farming business. Appellant was paid by Fralise Company checks and he was doing farm work at the time he was injured.

Of perhaps equal benefit to both parties is the fact that Mr. Edmondson gave appellant orders concerning work to be done for oil companies as well as to work for Fralise Farms.

Appellant relies upon such authorities as Texas Reciprocal Ins. Ass'n v. Latham, Tex.Civ.App.; Beaumont, 72 S.W.2d 648, Writ of Error Dismissed; Maryland Casualty Co. v. Donnelly, Tex.Civ.App.; Waco, 50 S.W.2d 388, Writ of Error Dismissed; and Blakenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W.2d 366.

These are "independent contractor" cases in which the courts state that the vital issue is to find in whom the right to direct and control the work is vested. With this question, the courts say, how or in what manner or by whom the person involved is paid is of little or no consequence.

We believe such decisions to be of little help here where the question is not independent contractor versus employee but simply does appellant work for one concern or the other. It seems to us that in answering this question it is of great importance to know by whom appellant's wages are paid.

At the time he was injured appellant was at work on property which belonged to Fralise Farms; he was doing the kind of work which such company was engaged in and he was being paid by it.

In our opinion this leaves no room for doubting that appellant was then an employee of Fralise Farms.

Even if we apply the right of control rule, advocated by appellant, and consider that appellant received his orders from Mr. Edmondson, the result is the same. Mr.

Edmondson acted in two capacities, one as director of Fralise Farms and the other as bookkeeper for Carpenter Production Company. When he directed appellant to do farm work he was clearly acting for Fralise Farms and not for a company engaged in the business of producing oil.

The authority most closely resembling this case which we have been able to find is Moffett v. Texas Employer's Ins. Ass'n, Tex.Civ.App., El Paso, 217 S.W.2d 142, Writ Ref., N.R.E.

The question there was whether one Day, at the time he was injured, worked for Ballard Burgher or for Overpass Auto Parks, Inc. The insurance policy involved covered only the employees of Burgher.

Day worked for and was paid by Burgher as a parking lot attendant for some time before and until October, 1943, when Overpass took over operation of the lot. Day remained on the job and continued to do the same character of work and took orders from Burgher but from October 1943 to the date of his injury he *was paid by Overpass.*

Burgher was a stockholder in the Overpass corporation. In holding Day to be an employee of Overpass, the court said: "It is elementary that in order to be covered by a policy issued to the insured the workman must be an employee of the insured. After October 1943 the parking lot business theretofore conducted by Burgher thereafter purported at least to be conducted by the Overpass Auto Park Company, a corporation. Burgher it is true, owned 57 shares of the corporate stock. Day's weekly pay checks were those of this corporation; from week to week he endorsed and cashed them. Burgher about or prior to October 1, 1943, had leased the parking lot property to this corporation. Burgher as president of the corporation gave when the occasion arose orders to Day; however it is fair to assume they were as president of the corporation. The inference is inescapable that prior to December 24, 1943, that Day knew there had been or purported to be a change in the ownership and operation of the parking lot. Prior to October 1943 his pay checks were issued by Burgher, subsequent to that date they were issued by the Overpass Auto Park, Inc. The evidence fails to show that on the date of the injury Day was an employee of Burgher. There may be a scintilla of evidence that in fact the operation of the Overpass Auto Park, Inc. was the individual activity of Burgher; Burgher was its president and a large stockholder therein, and it was consistent that as such he should control the management. We are of the opinion that the evidence was insufficient to raise the issue that Day was an employee of Burgher at the time he received the injury."

In our opinion the judgment of the trial court should be affirmed. It is so ordered.