## BULLOCK v. TEXAS EMPLOYERS INS. ASS'N.
### No. 14553.

Court of Civil Appeals of Texas. Dallas.
Dec. 5, 1952.

Rehearing Denied Jan. 16, 1953.

Bryan Bradbury, of Abilene, for appellant.

Burford, Ryburn, Hincks & Ford and Howard Jensen, all of Dallas, for appellee.

CRAMER, Justice.

This is an action to set aside a compromise settlement agreement entered into

by appellant James M. Bullock, as employee, with appellee Texas Employers Insurance Association, as insurer of Bullock's employer, Abilene Brick Company, and approved by the Industrial Accident Board of Texas. Those named will be hereafter referred to as "employee," "insurer," "employer," and "Board."

Employee received injuries while in course of his employment with his employer on June 21, 1950 and again on June 30, 1950. On each occasion he went to doctors of his own choosing who examined and treated him. The doctors told him he was not seriously injured and that there was not much the matter with him and that he could return to work in two or three days. Employee believed his doctors and on July 21, 1950 entered into a compromise settlement agreement with the insurer, settling his claim for $50. Before the settlement was completed insurer's agent told employee of his interview with the doctors and, as a part of the settlement agreement, insurer agreed to pay, in addition to the $50, employee's doctors' bills. Employee was also informed that they would call on the doctors and secure statements from them and that said statements would accompany the agreement when submitted to the Board for approval. Insurer's claim agent on July 24, 1950 called on one of the doctors who had treated employee and received a statement containing in substance what the doctor had told employee. On July 25, the agent called on the other doctor of employee and secured his statement which was also in substance as he had theretofore advised employee. After the Board, on July 31, 1950, approved the compromise settlement agreement, insurer paid the $50 to employee, also the medical expense to the doctors as they had agreed in the compromise settlement. The compromise settlement agreement was on the usual form prescribed by the Board and was based on statutory grounds. After the present suit was filed the plaintiff filed his first amended original petition reciting the above facts as to the settlement, alleged further that the doctors' statements accompanying the settlement agreement were not correct, that his injury on June 21, 1950 was serious; that in the accident he fell backward on a pile of bricks and received injuries to his back, especially the lower part of his back, causing a vertebra to become out of alignment and causing a narrowing of the spaces between the vertebrae, which injuries were severe and painful. Further that on June 30, 1950 his second injury was also serious; that it was received by him while loading brick for employer, and at such time he also fell backward, injuring his body generally and especially his back; suffering a fracture of the intervertebral disc together with a subluxation of the sacro-iliac and a narrowing of the spaces between the vertebrae, throwing two or three of the vertebrae out of alignment. He alleged his visits to Dr. Little and Dr. Merrick, and their statements to him in substance as recited above; also his entry into the compromise settlement agreement to which the doctor's statements were later attached; its approval by the Board and insurer's payment thereafter according to its terms, and the payment to the doctors. He then alleged the injuries received by him, although unknown to him at the time, were in truth severe and permanent; had, and would, totally and permanently disable him from performing manual labor for the balance of his natural life. That the Texas Employers Insurance Association was the insurer of employer under the Workmen's Compensation Act; alleged his wage rate and other material facts and his total and permanent disability. He further alleged as follows:

"Now for the reasons that this plaintiff would not have signed and executed the compromise and settlement agreement had it not been represented to him as aforesaid that his injuries were not permanent and serious, and that his injuries have turned out to be serious and permanent, and the fact that he relied upon the representations made to him by the doctors who were paid by the defendant for their services herein and whose statements were used by the defendant herein for the purpose of getting a compromise settlement agreement approved, and relied upon by the plain-

tiff in entering into said compromise settlement agreement, which representations were to the effect that the plaintiff was not seriously and permanently injured but, on the other hand, his injuries were not significant and that he would recover within two or three days and in truth and in fact plaintiff's injuries are serious and permanent and of such a nature that he has not recovered from them and will never be able to do the type of work he was formerly doing; that this plaintiff says that said compromise settlement agreement which he entered into with defendant herein and which was approved by the Industrial Accident Board on the 31st day of July, 1950, wherein this plaintiff was claimant in Claims Nos. 172952 and 173602, should in all things be set aside and held for naught."

After the insurer's plea of privilege was sustained by the 42nd District Court of Taylor County, Texas, and the cause was transferred to the District Court of Dallas County, the insurer answered by general denial and especially denied employee suffered the accident alleged or that he had sustained any injuries on either of the occasions, but, if he did, they were superficial in character, in no way disabling, and had long since healed and had been cured; that he was examined and diagnosed by doctors of his own choosing and entered into the compromise settlement agreement on oral reports to him by his own doctors, and that the accidents themselves were in dispute as to whether they ever happened, and therefore the Board's approval of the settlement agreement was res adjudicata and a bar to employee's suit as a matter of law. Also that the statements of the doctors relied on were the expressions of honest opinions only.

On such record the summary judgment appealed from was rendered and entered.

Employee, in this appeal, briefs but one point, to wit: "The error of the trial court in sustaining defendant's motion for summary judgment."

## Opinion

■ It is now settled that the summary judgment procedure in general applies to Workmen's Compensation cases. Fowler v. Texas Emp. Ins. Ass'n, Tex.Civ. App., 237 S.W.2d 373, writ ref.; Latta v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 243 S.W.2d 949. Also that in a suit to set aside a compromise settlement under Art. 8307, sec. 12, V.A.C.S., on grounds of fraud, the common law rule applicable to actions for rescission and cancellation controls. Texas Emp. Ins. Ass'n v. Kennedy, 135 Tex. 486, 143 S.W.2d 583.

■ Compromise settlement agreements can only be set aside for fraudulent representations relied upon by the employee, made by authorized agents of the insurer.

On the material question as to whether the two doctors, originally consulted by employee, whose statements were taken by insurer after the settlement agreement was signed, before the agreement was presented to or approved by the Board, were the agents of the T.E.I.A., or were his agents, the employee here cites Oberholtzer v. Myles, Tex.Civ.App., 147 S.W.2d 569; Jones v. Traders & General Ins. Co., Tex. Civ.App., 188 S.W.2d 739; Davis v. Commercial Standard Ins. Co., Tex.Civ.App., 194 S.W.2d 599; Associated Employers Lloyds v. Aiken, Tex.Civ.App., 201 S.W. 2d 856, 857; and Bertha v. Regal Motor Car Co., 180 Mich. 51, 146 N.W. 389.

The Oberholtzer case is cited by employee only because it uses and employs statements in 2 Tex.Jur., p. 487, § 89, and in 2 Am.Jur., p. 181, § 227, to the effect that where one without authority assumes to act as agent, or an agent exceeds his authority, the principal knowingly receiving and retaining the benefit of the transaction is deemed to have ratified the act and will be held liable for the act.

In the Jones case the employee received an injury to his eye and was carried to his family physician who in turn sent him to a specialist in Wichita Falls. Some time later the insurer sent a compromise settlement agreement, with a statement by the specialist, to its insured to be signed by the

employee. The employee signed the agreement, relying on the statement of the specialist. The court there held directly that since the letter was procured by the insurer from Dr. Egdorf and by insurer attached to the settlement agreement before the employee signed the agreement, that the employee, at the time he signed the agreement, relied on such statement by the doctor. But it also appears in the record that Dr. Frizell, family doctor of employee, was also the local doctor of insurer, and that it was Dr. Frizell who sent employee to Dr. Egdorf. Under such facts the court held that the statement of Dr. Egdorf was the statement of an agent of insurer since it used the doctor's letter in securing the settlement. The case is clearly distinguishable from the case here. Employee Bullock had visited his own doctors on his own initiative. His doctors so far as the record shows here had no connection with insurer. The insurer's agent, when he called on employee, advised employee as to what employee's own doctors had told him. The record shows there was no misrepresentation as to what the doctors told him. Employee himself knew what the insurer told him was true, since it was the same as his doctors had told him before the agent of the insurer called on the doctors. The employee knew when he signed the compromise settlement agreement that the insurer was going to get the statements from his (employee's) own doctors to attach to the settlement agreement.

The Davis case was by this Court and differs from the Jones case, supra, as follows [194 S.W.2d 604]: "* * * In Jones v. Traders and General Ins. Co., supra, to the compromise agreement of insurer was attached a statement of Dr. Egdorf to the effect that claimant's eye was well, which statement was read and relied on; the Eastland Court holding that the company having made use of the report to deceive Jones, Egdorf became defendant's agent insofar as the statement was concerned. * * *" The holding in the Da-

vis case, when considered in its setting there, was correct; but in our opinion is not in point under the facts in the present Bullock case.

The Aiken case was also by this Court. The facts in that case were that the employer, after the report to him by the employee, named two doctors for her to choose from. She chose one and later, when she was not satisfied with him, went to the other. She compromised her claim after she was assured over the phone by the last doctor she was all right. Under such record both doctors were the doctors of the insurer.

■ The cases cited by employee are, in our opinion, distinguishable from the case now before us, and not in point. Nothing in the insurer's action in reciting in the settlement agreement that the statements of employee's doctors would be attached to the settlement agreement, or that in addition to the $50 to employee, they would pay his doctors' bills, and obtain and attach their statements thereafter (but before the settlement was sent to the Board) to such agreement, was sufficient to make the doctors the insurer's agents. Employee's doctors had given employee their opinion before insurer's claim agent saw them, and before insurer's claim agent repeated them to employee before the settlement agreement was signed. Employee knew what his doctors' opinion was when it was repeated to him by the claim agent or adjuster. The claim agent or adjuster did not misquote the doctors' statements to employee.

Under the facts in this record we hold the doctors were the doctors of the employee and not of the insurer at the time the settlement was agreed upon. Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081; Lipscomb v. Houston Electric Co., Tex.Civ.App., 149 S.W.2d 1042, and cases there cited. Therefore there being no reversible error assigned, the trial court's judgment is affirmed.