BLYTHE

v.

TEXAS CRUSHED STONE CO., Inc. et al.

No. 10232.

Court of Civil Appeals of Texas.

Austin.

June 23, 1954.

Rehearing Denied July 21, 1954.

---

Adams, Browne & Sample, Beaumont, John W. Laird, Austin, for appellant.

Carl Wright Johnson, Alfred W. Offer, San Antonio, for Texas Crushed Stone Co., Inc.

Graves, Dougherty & Greenhill, Austin, for National Auto. & Cas. Ins. Co.

ARCHER, Chief Justice.

This is an appeal from an order granting appellees a summary judgment against appellant, and is before us on two points assigned as error, and are:

"*Point No. 1*

"Error of the court in granting summary judgment in favor of defendant Texas Crushed Stone Company, Inc., and against the plaintiff as to said defendant.

"*Point No. 2*

"Error of the court in granting summary judgment in favor of defendant National Automobile and Casualty Insurance Company and against the plaintiff as to said defendant."

Appellant as plaintiff instituted this suit against appellees and three other defendants, but nonsuit was taken as to Dr. Pepper Bottling Company and its driver Billy Earl Foulds.

The order granting the motions for summary judgments severed the cause as to L. C. Morris, driver of the car in which plaintiff was riding, and as to this defendant the cause is pending in the court.

The petition alleged that on October 4, 1951, at 7:30 o'clock a. m. plaintiff as a passenger for consideration in the automobile driven by L. C. Morris, who was at the time acting as agent, servant and employee of the defendant, Stone Company, and who was acting in the course of his employment, drove his automobile into the rear of the Dr. Pepper Bottling Company truck causing the collision, and produced in plaintiff serious and permanent physical injuries, and set out such.

The petition alleged that the Texas Crushed Stone Company, Inc., through its said agent and defendant Morris, was negligent in several particulars; further allegations were made that at the time and on the occasion in question that plaintiff was an employee of the Stone Company as a truck driver and was on his way to work in an automobile driven by a superior on the job in response to instructions given on the previous day, and was in the course of his employment and his injuries arose out of his employment and is entitled to compensation under the Workmen's Compensation Laws; and that appellee National Automobile and Casualty Insurance Company had a policy of Workmen's Compensation Insurance in force and effect with appellee Texas Crushed Stone Company, Inc., covering injuries of employees in employment and that plaintiff's said employer was a sub-

scriber; allegation was made as to weekly wages, injuries, filing of claim, etc., which in view of the trial court's disposition of the case, are unnecessary to further set out, and sought damages.

The appellees filed motions for summary judgment in their favor on the basis that there was no genuine issue of fact as to any material facts between the plaintiff and defendants, appellees herein, and attached two affidavits.

F. D. McLemore swore that he was employed by the Stone Company as general plant superintendent at and prior to the time of the accident; that Morris originally started working for the Stone Company as a heavy truck driver, and was Morris' supervisor, and that Morris was nothing but a truck driver and had no authority to do any of the hiring or firing of employees and in fact had only worked 10 days prior to the accident.

The affidavit stated that the appellant Blythe started to work as a light truck driver on October 3, 1951, at 80 cents per hour and worked for only one day; that affiant hired Blythe at the plant and set his rate of pay, working hours and designated his place of work, and further stated:

"A day or two before Blythe came to work for us I remember saying to several of the men at the plant while engaged in general conversation that we could use a few more truck drivers. Morris spoke up and said he knew of some but did not say who they were. I then said 'Tell them to come see me' or words to that effect. At that time I was doing all the hiring and firing of plant men and none of the other men in the plant had any authority to do any hiring and firing except Mr. Frank R. Rogers, the office manager who handled hiring and firing of his office staff. We had approximately fifty men in the plant. I set the rate of pay for each man after determining his qualifications. At that time Mr. T. J. McKinnon was the General Plant Manager, but he took no part in the handling of the men or the hiring or firing or the method to be used in hiring or firing and left these matters up to me. The hiring was done at the plant by me. The men would come around and ask for a job, and if we needed someone and the man qualified I would hire him and set his rate of pay and put him to work.

"At the time Blythe came to work a man by the name of B. Hays Belk was immediately over Blythe in the loading area. Belk had no authority to hire or fire and he took his orders from me. On the day Blythe worked he worked on the premises of the plant and it might be that he made a few trips across the road from the plant in doing his hauling.

"I hereby state that neither on October 3rd or 4th of 1951, or at any other time, did I give Morris instructions to bring Blythe to work. Every man at the plant got to work on his own and I was not authorized to, and I never did furnish or authorize transportation to and from work for any of the employees under me."

Frank R. Rogers, swore in his affidavit, that he was office manager for the Stone Company, and had charge of the records including the time cards and payroll and that Morris started to work as a heavy truck driver on September 24, 1951 having been hired by Mr. McLemore; that Morris worked through October 3, 1951 and returned to work about two weeks after the accident and worked until December 27, 1951.

Affiant stated that Blythe started work October 3, 1951 as a light truck driver and worked one day and he too was employed by Mr. McLemore, who did all the hiring and firing of plant employees.

The payment of employees is done by check and pay periods run from Friday a. m. through Thursday p. m., checks being given out Friday afternoon. The affiant swore that the company has never authorized and has never paid transportation to and from work for any of its employees.

The plaintiff filed his reply to the motions for summary judgment setting up various reasons why the motions should be stricken or overruled, and attached Blythe's affidavit in which it was stated that Morris told him that he wanted a man to drive a truck for the Texas Crushed Stone Company, fixed the hourly pay and that Blythe would work eight hours a day and sometimes longer, told the affiant to get in the car and go with Morris to the plant and took the affiant to the superintendent by whom he was employed; that Morris went one round on the truck with affiant.

That at the end of the day Morris told affiant to meet him at the employment office the next day at 7 a. m. That on the following morning Morris got two other men, who had a car and were told to follow Morris; that there were no means of transportation to the plant; that on the way the collision occurred by Morris running into the rear of the Dr. Pepper truck; that Morris did not tell affiant that he was a foreman or pusher until later on at the hospital, but that Morris acted like a foreman and was Blythe's superior.

That on the arrival at the plant Morris told the superintendent, "Well, I got you one man," and affiant stated:

"Whatever may have been the authority of L. C. Morris to hire and fire (it appearing that this has been disputed in this case by Morris and the employer), the Company did not repudiate anything he told me, but the rate of pay was as he had told me it would be, and the work was what he had told me it would be, and when he took me to the superintendent I was immediately carried to the timekeeper to turn in the routine information on that first day.
"No one questioned his right or authority to go out and get extra help, and he was obviously authorized to do so because he did it during working hours, and no one questioned him about it, and after I had turned in my information to the time keeper, the superintendent took me to him so that he could show me what to do. In short,

whether or not he was authorized to make a contract of employment (which he denies and which the superintendent has denied in this case), he was authorized to go and get men and bring them to the company to be hired there in any event, and he was bringing men to the company on both mornings as related above."

Mrs. Lolita McFarland's affidavit was also attached to the plaintiff's motion and she stated that Morris was a foreman for the Stone Company and is a relative of her husband; that on the morning of October 4, 1951 she and her husband got in Morris' car with Blythe, and Morris was driving in a direct route to the plant when the collision occurred.

The deposition of Morris was before the court and in which he testified that McLemore was in charge of the quarry operations when he went to work as superintendent over everything and as to the manner of payment of wages; that time was kept by cards, each employee being required to punch the clock in and out.; that he had heard the plant needed men badly, but that he had no privileges to hire anyone and no such authority; that he saw Blythe at the employment office and asked him if he wanted a job and he said yes and Morris said "Well, I believe I know where you can get a job, if you want to ride out with me" and so he said, "All right," and that this was the day before the accident; that McLemore did not know that he, Morris, was going to the employment office but knew Morris was going to see his brother-in-law; that it was Morris' own idea, and he was not paid anything or furnished any gasoline; that he, Morris, introduced Blythe to McLemore; that he was not directed to show Blythe how to drive the truck, and was not working in a supervisory capacity; and

"A. I was putting some springs on some of the trucks, mechanical work, in other words. At the time Mr. Blythe got off, he asked me was I going to town and I told him that, no, that I had to work some overtime,

which I did. He asked me could he ride out with me the next morning, and I told him he could if he would meet me in front of the employment office between seven-thirty and eight o'clock.

"Q. Did anyone from the plant tell you to pick him up at the employment office the next morning? A. No, sure didn't.

"Q. Whose idea was it that you pick him up at the employment office? A. It was my idea, because that was the only—I didn't know where the man lived, and that was the only place that I figured that he knew. He said he was a stranger in Austin, and since he was there that first morning, I figured he could find his way back there, so I just designated the employment office.

"Q. Did he offer to pay you anything for bringing him out to the plant? A. No, sir, he sure didn't.

"Q. Did you have any kind of an agreement with him as to his paying you anything for bringing him out there? A. No, sir.

"Q. Or his buying any gasoline for you? A. No, sir.

"Q. Now, at the time that you went to work for the Texas Crushed Stone Company, or at any time during the time you were working there, was there ever any provision made by the company to pay for your transportation to and from work? A. No, sir, we had to provide our own transportation.

\* \* \* \* \* \*

"Q. \* \* \* I will ask you whether your situation out there at the Texas Crushed Stone Company constituted you to be a superior of Blythe? A. I don't see why it would, because I was a common laborer just like he was.

"Q. It is further alleged in the plaintiff's petition, in response to in-structions given on the previous day at the job site, in effect, that you had gone down to pick him up. Is that true or not? Had you received instructions to pick him up? That is the question. A. No, sir, I sure hadn't.

\* \* \* \* \* \*

"Q. I see. Did you get paid by Texas Crushed Stone Company for any time that was not shown on the time clock, that you—in other words, you got— A. No, sir.

"Q. You never got paid for any time that you weren't on the time clock?

"Mr. Sample: We will object to that question. It hasn't been shown that he knows what the time clock shows.

"Mr. Dougherty: Well, he received his pay check.

"Q. Doesn't that pay check show what your hours are? A. Yes. In fact, I was short some hours from a mistake in the records, and after I got out of the hospital and in bed at home, well, they brought the balance of it down, for the amount of hours I had put in that week.

"Q. When were those hours worked, to the best of your recollection, that you were short? A. I don't recall what day the fourth of October came on. Anyway, it was for the week that—it was for the week that the check was ending, I believe, on Wednesday. That must have been on Tuesday the 4th. I didn't remember just exactly, now.

"Q. Was it for time prior to the 4th? A. Yes, and they made a seven or eight hour mistake, and they reimbursed me and brought the other little check down to me at home.

"Q. Did you punch the time clock at all on the 4th, the date of the accident? A. No, sir, I never did get there."

The portions of the deposition from which we have inserted parts and made reference to, were brought forward on a motion to supplement the record which we have granted.

The appellant has objected to the motion but has also supplemented the record by including what transpired before the court on the hearing by way of statements made by counsel and remarks and rulings made by the court.

We have carefully read the proffered portions of Morris' deposition as well as the record of the proceedings before the court.

Appellee, National Automobile & Casualty Insurance Company has stated its position and that it assumed the burden of showing that there was no genuine issue of a material fact that Blythe was not in the scope of his employment at the time he received his alleged injuries. That appellee must show that the only proper order which could be entered on a trial of the case, based on the evidence indicated on motion for summary judgment, would be a directed verdict for defendant.

We believe that the defendants, appellees herein, have discharged the burden imposed on them and that the judgments sustaining the motions for summary judgments were proper in view of the record as presented.

The appellant has not raised a genuine fact issue material to the case to show that Morris was one authorized by the Stone Company to hire him as an employee or that Morris was in the course of his employment with the Stone Company, or paid for any hours on October 4, 1951, the day of the accident.

This is a burden placed on appellant which he may discharge by showing by his motion supported by affidavits and other evidence that there is a genuine fact issue to be determined.

The affidavits attached to appellant's motions do not raise such an issue and the affidavits attached to appellees' motion as well as that of Blythe and the deposition of Morris are to the clear import that Morris was not authorized to employ appellant and was not in the course of his employment.

We do not believe that the evidence and the affidavits raise a material fact issue that Morris was authorized to hire appellant or was in the course and scope of his employment in transporting Blythe to the plant in the first instance or in transporting him on the day of the accident.

Rule 166–A, T.R.C.P.; McKay v. Dunlap, Tex.Civ.App., 244 S.W.2d 278, error ref. n. r. e.; Fowler v. Texas Employers' Insurance Ass'n, Tex.Civ.App., 237 S.W.2d 373, error ref.; Salmon v. Fidelity Bank & Trust Co., Tex.Civ.App., 258 S.W.2d 837; McKim v. Commercial Standard Ins. Co., Tex.Civ.App., 179 S.W.2d 357, error ref.

We have read the authorities cited by appellant but do not believe them to be determinative of the question here favorable to appellant, since in most instances the injury was actually had on the job, or the vehicle under the control of the employer.

Latta v. Texas Employers' Insurance Ass'n, Tex.Civ.App., 243 S.W.2d 949, error ref. n. r. e.; Rolfe v. Swearingen, Tex.Civ. App., 241 S.W.2d 236, error ref. n. r. e.; Arlington Heights Appliance Co. v. Gordon, Tex.Civ.App., 244 S.W.2d 337.

The judgment of the trial court is affirmed.