Ruth **YARBROUGH**, Appellant,

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION**, Appellee.

No. 6804.

Court of Civil Appeals of Texas, El Paso.

Nov. 7, 1979.

Rehearing Denied Dec. 31, 1979.

Hirsch & Bartley, H. Thomas Hirsch, Kevin R. Bartley, Odessa, for appellant.

Cotton, Bledsoe, Tighe, Morrow & Dawson, Charles L. Tighe, Midland, for appellee.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is a suit to set aside a compromise settlement agreement in a workers' compensation case. Plaintiff/Appellant, Ruth Yarbrough, had signed a Compromise Settlement Agreement of her workers' compensation and received the benefits thereof, and brought this suit to set aside the agreement on the grounds of fraud. At the conclusion of the Plaintiff's evidence before a jury, the trial Court directed a verdict for the Defendant and entered a judgment that the Compromise Settlement Agreement is valid and binding on the parties. We reverse that judgment and remand the case for trial.

Appellant's injuries occurred on September 16, 1975, when she was opening a box of tulip bulbs and some substance got in her eyes and on her face. She was treated by five doctors for problems with her eyes and skin. On December 2, 1975, she entered into the Compromise Settlement Agreement here involved for the sum of $1,250.00 in addition to $410.83 already paid, with the medical left open for one year. She had not at the time of settlement returned to work since her accident of September 16th, except for part of one day. Since the date of the settlement, Appellant has incurred more medical expense and she presented evidence that she is suffering from severe depression resulting from the original injury which was the subject of the Compromise Settlement Agreement.

Appellant appeals on the single point of error that the trial Court erred in granting the directed verdict as she had established a prima facie case for setting aside the Compromise Settlement Agreement.

■ The basis for setting aside a compromise settlement in a workers' compensation case is for fraudulent representations relied upon by the employee made by authorized agents of the insurer. *Bullock v. Texas Employers Ins. Ass'n.*, 254 S.W.2d 554 (Tex. Civ.App.—Dallas, 1952, writ ref'd). Appellant has presented her evidence and contends she made out a prima facie case. The

trial court has directed a verdict against her. In reviewing an instructed verdict, our task is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. In our review, we must consider all of the evidence in its most favorable light in support of the plaintiff's position and discard all contrary evidence and inferences. *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969); *Henderson v. Travelers Insurance Company*, 544 S.W.2d 649 (Tex.1976). When reasonable men may differ as to the truth of controlling facts, a jury issue is present. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948); *Henderson v. Travelers Insurance Company*, supra; 3 McDonald, Texas Civil Practice sec. 11.28.2 (1970).

■ The first element we will consider is the agency of those making the representations. It is held that, if a doctor makes false statements to a compensation claimant, the statements are not attributable to the insurance company if the claimant chose the doctor himself. *Mullens v. Texas Employers' Insurance Association*, 507 S.W.2d 317 (Tex.Civ.App.—Waco 1974, writ ref'd n. r. e.). Conversely, if the claimant's employer or the insurance company chose the doctor, the insurance company will be charged with any false statements made by the doctor. *Graves v. Hartford Accident & Indemnity Co.*, 138 Tex. 589, 161 S.W.2d 464 (Tex.Comm'n App.1942, opinion adopted). There is no evidence here that the claimant selected any of the five doctors who saw her. Her employer sent her first to Dr. Hestand. He referred her to Dr. Snyder, a dermatologist, and to Dr. Sheets, an eye specialist; on her second visit to Dr. Sheets, he was absent so she saw his associate, Dr. Tolia; Dr. Hestand also referred her to Dr. Naylor and Dr. Grice, but Dr. Grice did not see her until after the settlement. The insurer submitted the written reports of four of these doctors to the attorney for the claimant and to the hearing examiner at the pre-hearing conference where the settlement agreement was reached. Thus, the insurer used the doctors' reports in settling. That also makes them agents of the insurer.

*Jones v. Traders & General Ins. Co.*, 188 S.W.2d 739 (Tex.Civ.App.—Eastland 1945, no writ); *Associated Employers Lloyds v. Aiken*, 201 S.W.2d 856 (Tex.Civ.App.—Dallas 1947, writ ref'd n. r. e.).

■ The false representations of the doctors were in regard to the claimant's ability to return to work. There is no indication or contention in any way that the statements were not made in good faith. Absence of bad faith does not negate the claimant's cause of action. *Texas Employers' Insurance Association v. Maynard*, 362 S.W.2d 128 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.). There is no indication the doctors knew that their statements were false. It is not necessary to prove such knowledge. *Graves v. Hartford Accident & Indemnity Co.*, supra.

■ The report of Dr. Hestand was on the Standard Form for Surgeon's Report of the Industrial Accident Board. The doctor answered the question of how long further treatment was needed with "1 to 2 weeks." Under the section on disability, to the question of "Patient was/will be able to resume regular work on," he answered, "no loss time." In a second report filed later, the question requesting the date the patient was pronounced able to return to work was again answered by Dr. Hestand as "no loss time." Dr. Tolia reported that he saw the claimant six times and reported: "She was asked to continue using the eye drops and she was also asked to go back to work." The insurer stopped payments, and notified the Industrial Accident Board the claimant had been released to return to work and attached Dr. Tolia's report. Dr. Sheets filled in the form blank requesting the date the employee was able to return to work as "Off work 9–16–75 thru 10–14–75." Dr. Naylor told the claimant she "probably could go back to work there next week . . ." Appellee argues that statements of "no loss time" and "Off work 9–16–75 thru 10–14–75" are not representations that the claimant is able to return to work. If such statements were standing alone, that would be true, but not so when they are the

answer to a question of when the patient will be able to return to work. Also, a doctor asking a patient to return to work is tantamount to saying she is then able to return to work. As we view the matter, if any one of the representations was false, then that element of the claimant's case is established for each of the doctors was an agent of the insurer.

As to the element of reliance on the statements, Appellant's attorney testified he relied on the reports of the four doctors and his observation of the Appellant in his agreeing to the settlement. The claimant testified that she signed the settlement papers because her attorney asked her to and because "I thought I was going to be able to go back to work." She also testified: "[T]hey told me I could go back to work." And when asked "what made you think you could go back to work?", she answered: "Well, for one thing, that Dr. Naylor, that was the one, he told me I probably could go back to work there next week." The question of reliance is not foreclosed against the claimant as a matter of law under that evidence.

Some two weeks after the settlement agreement was reached, Dr. Hestand put the claimant in the hospital where she remained for some six weeks, and Dr. Hestand asked Dr. Grice to see her. The testimony and report of Dr. Grice that the claimant is suffering severe depression as a result of her injury and that it will be a matter of years before complete recovery can be expected is prima facie evidence that she has a meritorious claim for more compensation than she settled for. Also, it refutes the medical opinions that she "could probably go back to work there next week," "no loss time," and the other statements, the import of which is that she was able to go back to work.

We are of the opinion that, as to each of the necessary elements to set aside the settlement agreement, there is some evidence raising a fact question on which reasonable minds could differ. It follows that the directed verdict of the trial Court was improper. The judgment of the trial Court is reversed and the cause remanded for trial.