Carlos VALDEZ, Appellant,

v.

COMMERCIAL UNION ASSURANCE COMPANIES, Appellee.

No. 16442.

Court of Civil Appeals of Texas, San Antonio.

June 18, 1980.

Paul Andrew Mireles, Hardberger & Herrera, San Antonio, for appellant.

David Stephenson, Clark & Stephenson, San Antonio, for appellee.

MURRAY, Justice.

Carlos Valdez, appellant, brought this action to set aside a compromise settlement of a worker's compensation claim entered into with Commercial Union Assurance Companies, appellee.

On May 26, 1976, the appellant sustained an injury while in the course and scope of his employment. He testified that while making a delivery for his employer, National Automotive Parts Association (NAPA), he jumped off the back of the truck, injuring his ankle. After completing the delivery he returned to the NAPA office and reported the injury to his supervisor. Subsequently, the secretary of the company instructed the appellant to consult a doctor for treatment of his injury. The appellant selected a doctor from the phone book and made an appointment with him for the next day. After making the appointment with Dr. John Langston, the appellant informed the secretary of his choice.

On August 11, 1976, Dr. Langston sent a report to the Industrial Accident Board, the appellant's counsel, and the appellee describing the results of the several examinations he had made since the appellant's injury. In his report, he indicated that the appellant's injuries were limited to his foot and ankle. On August 18, 1976, the appellant returned to Dr. Langston's office complaining of pain in his back. In a second report sent to the same parties on September 1, 1976, Dr. Langston wrote that examinations on August 18 and September 1 revealed no back injury.

On September 27, 1976, the appellant and the appellee entered into a compromise settlement agreement in the amount of $2,000. In April of 1977, after numerous examinations by Dr. Langston and other doctors, the appellant underwent back surgery for the removal of a ruptured disc. Subsequently, the appellant brought this action alleging that Dr. Langston was an agent of the appellee; that he executed the compromise settlement agreement in reliance upon the representations of the appellee's agent that his injuries were not serious; that these representations were fraudulent; that at the time of the signing of the agreement he was unaware of the seriousness of his injuries; and that he would not have signed the agreement if he had been aware of the serious nature of his injuries.

The jury made the following affirmative findings: that prior to the execution of the compromise settlement agreement, Dr. Langston represented to the appellant that his injury was limited to his right foot and ankle; that this representation was false; that the appellant relied upon the representation that his injury was limited to his right foot and ankle; that the appellant's belief that his injury was limited to his right foot and ankle was a material induce-

ment to him in entering the settlement agreement; and that the value of the appellant's injury was greater than the amount agreed upon in the settlement agreement. In response to special issue number five the jury failed to find from a preponderance of the evidence that the appellee used the reports of Dr. Langston to induce the appellant to enter into the compromise settlement agreement. No issue was submitted inquiring whether Dr. Langston was the agent of the appellee. From a judgment decreeing the compromise settlement agreement to be in full force and effect, an appeal has been perfected.

■ The appellant contends, by two points of error, that the answer to special issue number five is contrary to the great weight and overwhelming preponderance of the evidence. We disagree.

It is undisputed that the appellant chose Dr. Langston to be the treating physician and that the appellee had no role in his selection. Moreover, at the time of the execution of the compromise settlement agreement all of the parties had a copy of Dr. Langston's reports. Thus, it is clear that when the agreement was entered into the appellant was as well aware of the contents of the reports as the appellee.

■ The uncontradicted evidence is that Mr. Ernesto Estrada, the adjuster who handled the appellant's claim, was the only employee of the appellee that discussed the appellant's case with him. Estrada's uncontradicted testimony reveals that he did not discuss Dr. Langston's reports with the appellant prior to the execution of the compromise settlement agreement. We conclude that the answer to special issue number five was not against the great weight and preponderance of the evidence.[1]

1. It should be pointed out that an affirmative answer to special issue number five would not have entitled the appellant to a judgment setting aside the agreement. In order to set aside a compromise settlement agreement, it must be shown, in addition to the other elements of fraud, that the misrepresentations relied upon by the employee were made by an authorized agent of the insurer. *See Bullock v. Texas*

*Employers Insurance Association*, 254 S.W.2d 554, 556 (Tex.Civ.App.—Dallas 1952, writ ref'd). Thus, it was incumbent upon the appellant to establish that Dr. Langston was the agent of the appellee or the employer. This, of course, the appellant failed to do. As above stated, neither the appellee nor the employer participated in the selection of Dr. Langston. Although there is language in some previous

The judgment of the trial court is affirmed.

decisions that indicates that if the carrier uses a doctor's report to induce a settlement, the doctor becomes the agent of the insurance carrier, a careful reading of these decisions reveals, however, that in each of these cases the treating physicians were either company doctors or selected by the insurance carrier. *See Home Insurance Co. v. Dickey*, 552 S.W.2d 552, 556–57 (Tex.Civ.App.—Amarillo 1977, no writ); *Associated Employers Lloyds v. Aiken*, 201 S.W.2d 856, 860–61 (Tex.Civ.App.—Dallas 1947, writ ref'd n. r. e.).