AMERICAN HOME ASSURANCE
COMPANY, Appellant,

v.

Ana B. RODRIGUEZ, Appellee.

No. 4-85-00485-CV.

Court of Appeals of Texas,
San Antonio.

March 30, 1988.

Gerald L. Shiely, Joseph L. Segrato, John Milano, Jr., Thornton, Summers, Beichlin & Dunham, San Antonio, for appellant.

W. Burl Brock, Catherine Stone, Watkins, Mireles, Brock & Barrient, San Antonio, for appellee.

Before CANTU, REEVES and CHAPA, JJ.

OPINION

REEVES, Justice.

This is a suit to set aside a compromise settlement agreement between the appellant (American Home) and the appellee (Rodriguez) that resolved a worker's compensation claim asserted by Rodriguez. In a prior unpublished opinion, this Court held that there was no evidence to support Rodriguez' contention that agents of American Home made representations to her which induced her to enter into an unsatisfactory compromise settlement agreement. In *Rodriguez v. American Home Assurance Co.*, 735 S.W.2d 241 (Tex.1987), the Supreme Court found that there was some evidence to support the trial court's judgment setting aside the agreement. Consequently, the Supreme Court remanded the cause to this court to pass on the factual insufficiency points raised by American Home.

Rodriguez was injured in the course of her employment with the Del Monte Corporation in Crystal City. She hired an attorney, Sid Cowan, to pursue her workers' compensation claim. He referred Rodriguez to Dr. Luis Gonzalez–Rios, an orthopedic surgeon. Rios' original diagnosis was that Rodriguez suffered from a severe low back sprain. In the due course of settling the claim, Lynn Houston, American Home's adjuster, referred Rodriguez to Dr. Coyle Williams for further examination. Dr. Williams concurred in Dr. Gonzalez–Rios' diagnosis of a low back sprain. Dr. Williams' diagnosis was reduced to writing and sent to American Home; a copy was sent to Dr. Gonzalez–Rios. In a follow-up examination, Dr. Williams again reported to Houston and Cowan that Rodriguez' back would get better and that she could return to work.

Thereafter, Rodriguez, Cowan, and Katie Flahive, an attorney for American Home,

met with a prehearing officer of the Industrial Accident Board (I.A.B.) and executed a compromise settlement agreement that settled Rodriguez' compensation claim for $3,600 and two years of future medical expenses. Since Rodriguez had limited knowledge of the English language, Jesus Dovalina, a legal assistant employed by Cowan, attended the hearing to aid Rodriguez in understanding the proceedings.

Flahive testified that she did not specifically recall if all the doctors' medical reports were in her file.[1] But she did testify that the I.A.B. always requires an up-to-date medical evaluation, and that she had no reason to believe that her file did not contain all of those reports on Rodriguez. She further testified that in evaluating a case and reaching a settlement figure, it is her policy to look at and rely on, at least in part, all the medical records in her file. She was also of the opinion that Rodriguez' attorney would not have settled the case without also having reviewed all those medical records.

Lynn Houston, American Home's adjuster, did not personally talk with either Rodriguez or Cowan. She testified she determined that Rodriguez suffered a back sprain after reviewing Drs. Gonzalez–Rios' and Williams' medical reports. She sent those reports to Flahive. She further testified that compromise settlement agreements are based on medical reports and other information found in an adjuster's case file.

Rodriguez' pain persisted after the agreement was finalized. A myelogram was performed, and it was determined that she suffered from a herniated disc. Within six months from the date of the settlement, Rodriguez underwent surgery to remove the damaged disc. Suit was instituted to set aside the compromise agreement, and after a jury trial, a judgment was entered to that effect.

■ To set aside a compromise settlement agreement, a worker must show that

---

1. She had destroyed the records in the normal course of business.

misrepresentations concerning his or her injuries were made by the employer or compensation carrier, that the worker relied on these misrepresentations in making the settlement, and that there was a meritorious claim for more compensation than had been originally agreed to. *Rodriguez*, pp. 241–42; *Brannon v. Pacific Employers Insurance Co.*, 148 Tex. 289, 224 S.W. 2d 466, 468 (1949).

■ We are of the opinion that there was sufficient probative evidence for the jury to find that American Home relied on Rodriguez' doctor's medical records as well as Dr. Williams' in entering the settlement agreement. When American Home's agent used Rodriguez' doctor's reports in reaching the compromise settlement, it made the doctor its agent. *Rodriguez*, at p. 242; *Mackintosh v. Texas Employers Insurance*, 486 S.W.2d 148, 154 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

■ We are also of the opinion that there was sufficient evidence for the jury to have found that Rodriguez relied upon Dr. Williams' representations. It was Dr. Williams' opinion that Rodriguez suffered from a back sprain and she could return to work. A copy of this opinion was directed to Rodriguez' attorney. The attorney-client relationship is one of principal and agent, and the acts of one ordinarily binds the other. *Portnow v. Berg*, 593 S.W.2d 843, 845 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). It is reasonable that Dr. Gonzalez–Rios and Rodriguez' attorney informed her of Dr. Williams' diagnosis and prognosis.

Although Rodriguez had difficulty understanding the English language, she testified that Dr. Williams had communicated to her that she only had a sprained back and could, when he released her, return to work. She further testified that she made the decision to accept the compromise settlement agreement because she was told that "the doctors were of the opinion that there was nothing wrong with her back, save the back sprain."

American Home also contends that the court erred in overruling its objection to Special Issue No. 5 because "it is improperly worded and insufficient to support a judgment that an agent of the appellant made a representation to appellee." The issue asks:

> Do you find from a preponderance of the evidence that the defendant, American Home Assurance Company, acting through its agents, servants or employees, used any of the representations found by you in Special Issue Nos. 1A, 1B, 1C, or 3A, 3B or 3C (medical findings of the doctors) in making the agreement with Ana B. Rodriguez of February 3, 1983?

The jury answered the issue affirmatively.

■ We find that Special Issues Nos. 6 and 7 adequately addressed the question of whether American Homes' agents made representations to Rodriguez. In Special Issue No. 6 the jury found that Rodriguez relied on medical advice of Drs. Williams and Gonzalez–Rios. In Special Issue No. 7 it found that the doctors' representations materially induced Rodriguez into entering into the agreement with American Home. This point of error is overruled.

The remaining points of error all relate to the sufficiency of the evidence to establish the agency relationship between American Home and Drs. Gonzalez–Rios and Williams which have already been addressed by this opinion.

The judgment of the trial court is affirmed.

CANTU, Justice, dissenting.

This case comes to us on remand from the Texas Supreme Court. Ana B. Rodriguez brought suit against American Home Assurance (American Home) to set aside a compromise settlement agreement in a worker's compensation case. Rodriguez was injured during the scope and course of her employment at the Del Monte Corporation in Crystal City, Texas. Rodriguez's attorney, Sid Cowan, sent Rodriguez to Dr.

Gonzalez–Rios for diagnosis. Dr. Gonzalez–Rios determined that Rodriguez was suffering from a back sprain, and referred her to Dr. Edward Liske in San Antonio, Texas, for an EMG and a CAT scan at the Southwest Methodist Hospital. After receiving a report from Dr. Liske and the result of the CAT scan, Dr. Gonzalez–Rios notified American Homes' adjuster, Lynn Houston, that Rodriguez was suffering from a severe lower back sprain and was disabled pending further medical treatment.

Lynn Houston testified at trial that she referred Rodriguez to Dr. Coyle Williams in San Antonio. Rodriguez saw Dr. Williams on December 3, 1982. Dr. Williams refused to tell Rodriguez what was wrong with her when he conducted his examination, but told her that he would notify Sid Cowan. Dr. Williams sent a letter to Houston and Cowan on December 6, 1982, in which he stated his opinion that Rodriguez suffered a back sprain which would eventually heal without permanent disability. Dr. Williams' report also noted that the "CAT scan of the lumbar spine shows a questionable lesion of the L4–L5 disc."

After this release to return to work, American Home discontinued worker's compensation benefits to Rodriguez. Rodriguez attempted to return to work but after a few hours had to discontinue due to pain. Dr. Gonzalez–Rios saw Rodriguez on December 10 and January 14. Dr. Gonzalez–Rios testified that Rodriguez's condition remained constant through this period. However, he also testified that on January 15, 1983, he "started to tell his patient that if she continued to have the discomfort that a myelogram would be necessary." He further testified that on that date there was no doubt in his mind that Rodriguez was suffering nothing more than a low back sprain.

On February 3, 1983, Rodriguez entered into a compromise settlement agreement with American Home, whereby Rodriguez was to receive $3,600.00 and future medical expenses through February 3, 1985. The agreement was executed at a pre-conference hearing with the Industrial Accident Board. Present at the hearing were Rodriguez; her attorney, Sid Cowan and his legal assistant, Jesus Dovalina; Katie Flahive, attorney for American Home; and the pre-hearing officer.

Rodriguez testified at trial that she does not speak nor understand English, but that she does understand a few words. She remembered hearing the words "Dr. Gonzalez–Rios," and "Dr. Williams," and "sprain" at the pre-conference hearing. She further testified that no one spoke to her at the pre-hearing conference except Dovalina, who acted as her interpreter.

Dr. Gonzalez–Rios also testified that he suggested to Rodriguez on April 14, 1983, that a myelogram might be needed. A myelogram was performed in June of 1983, after which Rodriguez was diagnosed as having a herniated disc. In July of 1983, Rodriguez underwent surgery for removal of the L4–L5 disc. According to Dr. Gonzalez–Rios, Rodriguez now has a partial permanent disability of twenty-five percent (25%) applying to the lumbar spine; and is restricted from lifting over twenty pounds and repeated stooping, lifting, or bending.

Rodriguez brought suit to set aside the settlement on grounds that she detrimentally relied on misrepresentations made by American Home. After a jury trial, judgment was entered in favor of Rodriguez, setting aside the settlement agreement and returning the cause to the Industrial Accident Board for further proceedings. American Home appealed, and this Court reversed and rendered judgment for American Home based on this Court's finding that there was no evidence that Dr. Gonzalez–Rios was an agent of American Home and no evidence that Rodriguez relied on any representations made by American Home's agent, Dr. Williams. The Texas Supreme Court reversed, holding that there was more than a scintilla of evidence that Rodriguez relied upon representations of agents of American Home in agreeing to

the settlement, and remanded the cause for consideration of the factual insufficiency points. Relying upon the guidance of the Supreme Court the majority now agrees that what was once a scintilla or less now amounts to sufficient evidence. I would find that although there may have been more than a scintilla of evidence, it was insufficient to support the jury's findings, and I would reverse the trial court's judgment and remand to the trial court.

Although it is primarily the province of the jury to find facts, the court of appeals may "unfind" facts when the jury's findings are manifestly unjust. In contrast to a "no evidence" point of error, which contends as a matter of law that there is no more than a scintilla of evidence supporting the jury's findings, an "insufficiency of evidence" point of error contends that although there was some evidence to support the jury's findings, the evidence was insufficient to the extent that the jury's findings were manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex. 1986).

The Texas Supreme Court held that there was more than a scintilla of evidence that American Home used the reports of Dr. Gonzalez–Rios in reaching its settlement, thus making it possible for the doctor to be found an agent of American Home. *See Mackintosh v. Texas Employers' Ins. Ass'n*, 486 S.W.2d 148, 152–55 (Tex.Civ. App.—Dallas 1972, writ ref'd n.r.e.).

No testimony was presented at trial as to what occurred at the settlement agreement. Katie Flahive, American Home's attorney at the pre-conference hearing, testified that she did not remember the hearing on the Rodriguez case. However, she testified that generally in a worker's compensation case she looked at the doctors reports provided to the adjusters, and relied on them "to a certain extent."

Rodriguez testified that she heard Dr. Gonzalez–Rios' name mentioned at the pre-

hearing conference, but did not understand enough English to relay the context. No one else testified as to the events at the conference. Thus, while there may be more than a scintilla of evidence that Dr. Gonzalez–Rios' reports *may have been used*,[1] I would find that there was insufficient evidence to support the finding that American Home actually used Gonzalez–Rios' reports in entering into the settlement agreement. Moreover, evidence that Rodriguez or her attorney selected Gonzalez–Rios as her doctor negates any implied finding that Gonzalez–Rios was an agent of American Home. *See Valdez v. Commercial Union Assurance Cos.*, 602 S.W.2d 345, 346 (Tex.Civ.App.—San Antonio 1980, no writ); *Yarbrough v. TEIA*, 591 S.W.2d 556, 558 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). Because Rodriguez cannot establish the agency relationship with a finding that American Home used Dr. Gonzalez–Rios' reports I would hold that there is a factual insufficiency of evidence supporting a vital fact finding. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 366 (1960).

The supreme court also found some evidence amounting to more than a scintilla supporting jury findings that Rodriguez relied on representations made by Dr. Williams, the doctor recommended by American Home. The court held that Rodriguez's testimony constituted some evidence of Dr. Williams' representations. Rodriguez testified that she accepted American Home's offer because she "was told that the doctors were of the opinion that there wasn't anything wrong with me, other than it was a sprain, and that it was going to get well." Throughout her testimony, Rodriguez referred to "the doctors," and not to Coyle Williams specifically; except in one instance wherein on direct examination she was asked:

> And I believe you said that [Katie Flahive] talked about Dr. Rios and Dr.

---

1. The majority opinion arrives at agency by stating that American Homes agent *used* Rodriguez's doctor's report in reading the compromise settlement, citing page 2 of the Supreme Court's slip opinion. The Supreme Court, however, only recognizes that the agency if it arises, arises only upon an assumption of use.

Williams, and your understanding of the sprain business, was that from what Dr. Williams and Dr. Rios had said?

Answer: Yes.

I would stand by our former position that this leading question was vague and indefinite. I would hold that it "shocks the conscience" to uphold a jury finding of agency based solely on this evidence. *See Pool, supra* at 635.

Rodriguez testified that no one spoke to her at the pre-hearing conference other than her attorney's legal assistant. No other evidence was presented that agents of American Home spoke to or otherwise made representations to Rodriguez at the conference or to Rodriguez through her attorney as was argued by Rodriguez. Rodriguez maintains that representations were made to her attorney, which she alleges is the same as representations made to her personally.[2] Rodriguez argues that the letters sent by Dr. Williams to Rodriguez's attorney constitute representations to Rodriguez, personally or through her attorney, resulting in reliance by Rodriguez on the diagnosis rendered by Dr. Williams. The supreme court found that the two letters dictated by Dr. Williams for American Home, of which copies were sent to Rodriguez's attorney, constitute evidence of a representation made to Rodriguez. I would reiterate that the testimony was that Dr. Williams refused to tell Rodriguez what was wrong with her when he conducted the examination. Doctor's reports are commonly discoverable under our rules of procedure. TEX.R.CIV.P. 167a(b). Since production of such reports may be compelled, no one can say that an agency relationship is created merely by providing the reports as part of negotiations. I would hold that the evidence of copies of letters sent from Dr. Williams to Rodriguez's attorney, while perhaps more than a scintilla of evidence, is nonetheless insufficient evidence to support the findings that an agent of American Home made representations to Rodriguez concerning her medical condition.

Finally, the supreme court finds that there was some evidence that Rodriguez relied on the representations of Drs. Williams and Gonzalez–Rios. I would not reach this point because I would hold the evidence insufficient to support findings that Dr. Gonzalez–Rios was an agent of American Home and that Dr. Williams made any representation to Rodriguez. Regardless of whether Rodriguez relied on her own doctor's opinion, there are no grounds for setting aside the settlement agreement because there is not sufficient evidence that her doctor was an agent of the insurance carrier. Moreover, a finding of insufficient evidence that Dr. Williams made any representation to Rodriguez renders moot the question of whether Rodriguez relied on the alleged representations.

Therefore, upon consideration of the factual insufficiency points remanded to this Court by the supreme court, I would hold that the evidence was factually insufficient to support the jury's findings. I would reverse the judgment of the trial court and remand the cause for a new trial.

I respectfully dissent.

2. Once again, the majority opinion strains the evidence in the record to achieve a desired result when it states "It is reasonable that Dr. Gonzalez–Rios and Rodriguez's attorney informed her of Dr. Williams' diagnosis and prognosis." Evidence to be sufficient should exist in the record independent of what might have been reasonable. As a reviewing court we take a case as we find it and have no business supplying missing facts by what may be reasonable or by way of inferences, presumptions, assumptions, intendments and the like.

Moreover, the record, in fact, negates misrepresentation by either doctor. There is evidence that two months before the settlement, American Home's doctor sent a report to Rodriguez's attorney noting that there was a "questionable lesion of the L4–L5 disc." There is also evidence that about twenty days before the settlement Rodriguez's own doctor told Rodriguez that she might have to have a myelogram if her discomfort continued.