

IN THE
TENTH COURT OF APPEALS

No. 10-12-00072-CV

IN THE MATTER
OF THE MARRIAGE OF
VALERIE WESTERN AND ELDON BURNICE WESTERN, II,

From the County Court
Bosque County, Texas
Trial Court No. 11-02-05911-CCL-CV

MEMORANDUM OPINION

In this appeal, appellant, Eldon Burnice Western II, challenges the trial court's final divorce decree. In three issues, appellant argues that: (1) the parties did not enter into an enforceable Rule 11 Agreement, *see* TEX. R. CIV. P. 11; (2) the parties' agreement, if any, is unenforceable because it did not include material terms; and (3) the trial court's final divorce decree did not effectuate a fair and equitable division of the marital estate. We affirm as modified.

## I.   BACKGROUND

Appellee, Valerie Western, and Eldon were married on May 3, 1987. However, in March 2011, Valerie filed for divorce. Subsequently, Eldon filed an answer and

counter-petition for divorce. The trial court scheduled a final hearing on this matter for June 13, 2011.

At the final hearing, Valerie's counsel represented to the trial court that the parties had reached an agreement concerning the division of their community property. Eldon's counsel did not object to Valerie's representation about the purported agreement. Valerie and Eldon testified at the final hearing. Valerie outlined the provisions of the purported agreement and testified that she believed the agreement to be fair and equitable to the parties. When the trial court asked what the parties agreed would happen to the couple's house, Valerie's counsel explained the purported agreement, and Eldon's counsel agreed and stated on the record, "That's right."

Thereafter, Eldon testified that he understood and agreed that: (1) he is responsible for the couple's house and the note for eighteen months if it is not sold; (2) half of his retirement would go to Valerie; (3) he is keeping his boat and is responsible for the note associated with the boat; (4) Valerie would receive all of the household items, except for the dining room table and chairs; (5) he would keep a Dell laptop and the couple's bedroom furniture; (6) Valerie would receive a 50-inch Samsung television and a "Longtech Computer"; (7) he would pay Valerie $3,000, unless she fails to pay the debt owed on the television and the "Longtech Computer"; and (8) Valerie would receive all of the miscellaneous items listed on page 2 of the "Proposed Property Division" tendered by Valerie.

Later, the trial court asked about an outstanding debt the couple has. Apparently, the couple took out a loan in the amount of $7,630 from Gene and Cathy

Ferguson on August 23, 1988, and, according to the record before us, the couple owed $4,080 on the loan at the time of the final hearing. During the conversation about the debt, Eldon stated the following: "Your Honor, I never signed, under oath, I never signed anything with whatever agreement." Valerie responded, "Your signature is on it, Burnie. 25 years ago . . . ." The trial court then interjected:

> Mr. Western, it has been represented to me that you-all had an agreement on this case and I'm going to go on that assumption. Now if you don't feel like you owe the debt, then, you know, I'm not going to order you to do it. I'm going to rule on it.

The trial court ultimately granted Valerie's petition for divorce and divided the community property according to the alleged agreement between the parties.[1] The trial court also entered findings of fact and conclusions of law, which included a finding that: "There was an agreement made by the parties concerning the division of the marital estate. This agreed[-]to property division was a just and right division of the parties' marital estate having due regard for the rights of each party."

After obtaining new counsel, Eldon filed a motion for new trial, and shortly thereafter, the trial court conducted a hearing on Eldon's motion. At the hearing on his motion, Eldon argued that the parties did not agree to the property division. Nevertheless, Valerie testified regarding the particulars of the parties' agreement and noted that the purported agreement was Eldon's proposal. Thereafter, Eldon admitted

---

[1] In her appellee's brief, Valerie acknowledges that the final divorce decree contains a clerical error with regard to the Ferguson loan. At the final hearing, the parties agreed that the note would be repaid without interest; however, the final divorce decree stated that Eldon's repayment of his share of the loan would be at a 9% interest rate. Because Valerie concedes that the final divorce decree contains an error, and because the record supports Valerie's contention, we modify the final divorce decree to indicate that Eldon's repayment of his share of the Ferguson loan be without interest.

that he did not tell the trial court at the final hearing that he did not want to enter into the agreement outlined by Valerie. At the conclusion of this hearing, the trial court denied Eldon's motion for new trial, and this appeal ensued.

## II. THE PURPORTED AGREEMENT AND TEXAS RULE OF CIVIL PROCEDURE 11

In his first issue, Eldon contends that the record does not indicate that the parties entered into an enforceable agreement under Texas Rule of Civil Procedure 11. *See id.* In his second issue, Eldon argues that the agreement, if any, is unenforceable because it did not include all material terms. Valerie counters that Eldon did not preserve his first issue because his motion for new trial is too general and vague and because he did not object in the trial court. With regard to Eldon's second issue, Valerie asserts that the agreement contained all material terms and the additions made by the trial judge did not substantively add or change any of the terms of the agreement.

### A. Preservation of Error

The record reflects that Eldon did not object to Valerie's testimony about the details of the purported agreement. In fact, Eldon's trial counsel questioned him about the details of the agreement at the final hearing, and Eldon agreed to the terms. But, after obtaining new counsel, Eldon filed a motion for new trial, which stated the following, in its entirety:

1. This motion is presented within the time allowed by law on motions for new trial. The Final Decree of Divorce in this case having been rendered on December 2, 2011.

2. The judgment rendered on December 2, 2011, in this case should be set aside because it is manifestly unfair and unjust. The order is not a fair

and equitable division of the parties' estate. There is not sufficient evidence provided at the time of trial to support the judgment.

At no point prior to the trial court's signing of the final divorce decree did Eldon argue that he and Valerie did not have an agreement to divide the community estate. Instead, Eldon waited until the hearing on his motion for new trial to raise this argument. Nevertheless, at the hearing on Eldon's motion for new trial, Valerie's counsel objected to Eldon's motion as being too general. The trial court overruled Valerie's objection, and, after hearing arguments and testimony, denied Eldon's motion for new trial.

A point on appeal premised on a trial court's ruling on a motion, request, or objection must be supported by a showing in the record that the motion, request, or objection was presented to and acted upon by the trial court. TEX. R. APP. P. 33.1(a); *see Guyot v. Guyot*, 3 S.W.3d 243, 246 (Tex. App.—Fort Worth 1999, no pet.); *see also Hadeler v. Hadeler*, No. 04-06-00459-CV, 2007 Tex. App. LEXIS 4969, at *4 (Tex. App.—San Antonio June 27, 2007, no pet.) (mem. op.). "It is the appellant's responsibility to preserve error for appeal by taking affirmative steps to ensure that all matters he may wish to appeal are timely and properly entered into the trial court record." *Guyot*, 3 S.W.3d at 248.

While we do not believe that Eldon's motion for new trial is a model of clarity with respect to his first issue on appeal, *see* TEX. R. CIV. P. 321, 322, the record reflects that Eldon's counsel raised the issue of whether an agreement between the parties existed at the hearing on his motion for new trial. Thus, we cannot say that Eldon failed to preserve error in this issue by not making the complaint in the trial court. *See* TEX. R.

APP. P. 33.1; *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (citing TEX. R. APP. P. 33.1); *see also Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 476 (Tex. App.—Dallas 2003, pet. denied) ("Without proper presentation of the alleged error to the trial court, a party does not afford the trial court the opportunity to correct the error."); *cf. In re Roberson*, No. 05-07-01061-CV, 2008 Tex. App. LEXIS 8471, at **2-5 (Tex. App.—Dallas Nov. 12, 2008, no pet.) (mem. op.) (concluding that appellant did not preserve for appellate review an issue because the argument was not raised during trial or in a motion for new trial). Accordingly, we must address the merits of these issues.

### B.   The Purported Agreement

Texas Rule of Civil Procedure 11 provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching upon any suit pending will be enforced unless it be in writing, signed and filed with papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. It is undisputed that the parties' purported agreement was not reduced to writing and signed by the parties. Instead, Valerie contends that the purported agreement complies with Rule 11 because it was made in open court and entered of record. *See id.*

As stated earlier, Valerie testified at the final hearing as to the details of the couple's purported agreement. She even testified that the agreement was drafted by Eldon. Also during the final hearing, Eldon's trial counsel neither objected to Valerie's testimony that an agreement between the parties existed, nor did he contest statements made by Valerie's counsel to the trial court about the agreement. *See Am. Home Assur. Co. v. Rodriguez*, 749 S.W.2d 897, 899 (Tex. App.—San Antonio 1988, no writ) (noting

that, because an attorney is a representative of his client, an attorney's actions are binding upon his client in all matters where by law the client is not specifically required to act for himself); *see also Hadeler*, 2007 Tex. App. LEXIS 4969, at **4-5 (same). Furthermore, on several occasions, the trial court announced that the parties had an agreement; however, neither Eldon, through his trial testimony, nor his trial counsel attempted to correct the trial court or refute that representation. *See Berg v. Wilson*, 353 S.W.3d 166, 173 (Tex. App.—Texarkana 2011, pet. denied) (noting that a settlement agreement, even though not in writing, is valid and enforceable if it is made in open court and agreed to by the parties; that settlement agreements are governed by contract law; and that the settlement agreement must define essential terms with sufficient detail to allow the trial court to determine the obligations of the parties). In addition, Eldon did not object to the admission of Petitioner's Exhibit 1, which was a "Proposed Property Division" tendered by Valerie. The "Proposed Property Division" listed the couple's property, debt, and the values for each for the trial court to consider in dividing the marital estate.

In effect, Eldon is attempting to repudiate the agreement he had with Valerie after the rendition of the divorce, which runs counter to section 7.006(a) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 7.006(a) (West 2006) (providing that spouses may enter into agreements concerning the division of the property and that the agreements may be revised or repudiated *before* rendition of the divorce or annulment unless the agreements are binding under another rule of law). Eldon points to the testimony he provided at the final hearing about the Ferguson loan as proof that no

agreement existed. However, in reviewing the record, we find that there is ample evidence to support the trial court's conclusion that the parties had entered into an agreement regarding the division of the property contained in the marital estate. Further, Eldon's attempt to repudiate the agreement during the hearing on his motion for new trial was untimely, considering the trial court had already signed the final divorce decree. *See id.*; *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied); *Clanin v. Clanin*, 918 S.W.2d 673, 677 (Tex. App.—Fort Worth 1996, no writ) (holding that appellant did not timely repudiate his consent to an agreement in a divorce case when he did not object at the final hearing, he did not indicate to the trial court at the final hearing that he was withdrawing his consent, and he first voiced his dissatisfaction with the divorce decree in his motion for new trial); *see also Vineyard v. Wilson*, 597 S.W.2d 21, 23 (Tex. Civ. App.—Dallas 1980, no writ) (noting that a valid consent judgment cannot be rendered if one of the parties does not consent and that consent must exist at the very time the court undertakes to make the agreement the judgment of the court). Accordingly, we overrule Eldon's first issue.

## C.     Whether the Agreement Contained All Material Terms

In his second issue, Eldon argues that the agreement is unenforceable because it did not contain material terms which were later clarified after the trial court questioned the parties. *See In re Ames*, 860 S.W.2d 590, 593 (Tex. App.—Amarillo 1993, no writ) ("In a judgment by consent, 'the court has no power to supply terms, provisions, or essential details not previously agreed to by the parties.'") (quoting *Matthews v. Looney*, 132 Tex. 313, 317, 123 S.W.2d 871, 872 (1939)). As noted by Valerie, the trial court only asked for

clarification of the agreement during the final hearing with each party present.  In any event, of all the clarifications provided, Eldon never once objected at the final hearing.  Moreover, we do not believe that these clarifications were of a material nature as to render the agreement unenforceable.

First, the trial court asked whether the parties put any time limitation on the sale of the house.  Valerie stated that she would agree to the house being sold within eighteen months.  Later, Eldon was asked about the eighteen-month provision, and he indicated that he understood and ostensibly agreed to the time limitation.  At no point during the final hearing did Eldon object to this provision.

The trial court also asked how the parties intended to file their taxes for the coming tax year.  Eldon asserted that he filed his 2010 tax return separately, and his attorney stated that the parties would be filing separate tax returns in the future.  Moreover, the trial court inquired about the timing of the payments on the $3,000 debt.  Valerie's counsel stated that she thought the payments should be made monthly with a start date of July 1 and no interest.  The trial court then asked Eldon's counsel whether a $250-a-month payment with no interest was okay, to which Eldon's counsel replied, "Yes sir, that's fine."

The other two items about which Eldon complains pertain to the payment of attorney's fees and any debt incurred by the parties after the date of separation.  In response to Eldon's complaint, Valerie asserts that the trial court "simply inserted the default rule regarding payment of debts in a divorce and payment of attorney's fees."  And, with regard to the couple's debts, the trial court divided them equally.

Furthermore, the final divorce decree stated that each party is responsible for their own "attorney's fees, expenses, and costs incurred as a result of legal representation in this case."

Other than the provisions for attorney's fees and the couple's debt accumulated after separation, we find the trial court's clarifications to be minor in nature and not material so as to render the agreement unenforceable. *See Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (holding that a trial court cannot supply, modify, or omit *material* terms to the settlement agreement). The record indicates that the parties agreed to the division of all of the property contained in the community estate, but they lacked a few minor details regarding the division. Moreover, all of the clarifications, other than the attorney's fees and division of the debts incurred after the couple separated, were announced in open court, acknowledged by the parties, and essentially ratified by the parties failing to object at the final hearing.

With regard to additional terms or clarifications, such as the attorney's fees and the division of debts incurred after separation in this case, Texas courts have held that the "court may divide the community estate of the parties upon divorce by itself partitioning the estate, by setting forth a property settlement agreement in the decree, or by incorporating such an agreement by reference in the decree." *Clanin*, 918 S.W.2d at 677 (citing *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied)). And, "[a]s to the remainder of the estate, the court must follow the mandates of sections . . . of the Family Code to make a 'just and right' division of the property." *Id*.

In *Clanin*, appellant complained that "such subjects as dispute resolution, the splitting 50/50 of the uninsured health care expenses of the children, awarding financial accounts solely in any one partys' [sic] name to that party, and other similar issues, were never mentioned in the agreement but appear in the final divorce decree." *Id.* at 677. The Fort Worth Court of Appeals, applying the aforementioned principles of partitioning the estate and following the mandates of the family code regarding the "just and right" division for the remainder of the estate, concluded that "[t]he other provisions in the decree reflect the court's 'just and right' division of the rest of the community estate. None of these provisions either are beyond the scope of the agreement made by the parties or provide a basis for reversal." *Id.* at 678. We find the trial court's provisions in this case for attorney's fees and the division of the debts accumulated after separation to be similar to the provisions added by the trial court in *Clanin*. *See id.* at 677-78. These provisions do not directly contradict the agreement of the parties, and we do not believe that they somehow render the agreement unenforceable. *See, e.g., Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (holding that, when parties have reached a settlement agreement, a final judgment based on that agreement must be in "strict or literal compliance with that agreement"). Accordingly, we overrule Eldon's second issue.

### III.    JUST AND RIGHT DIVISION OF THE MARITAL ESTATE

In his third issue, Eldon contends that the trial court's judgment did not result in a just and right division of the marital estate. In particular, Eldon argues that the trial court's division of the community estate is unfair and unjust because, other than the

house, the record "does not contain any evidence of values on any of the rest of the property" and because Valerie was awarded the house, which was worth $73,340, while Eldon was awarded the debt on the house.

At the outset, we note that our analysis of this issue is based upon the briefs of the parties, and we do not address the propriety of whether a Rule 11 Agreement must comply with the normal requirement that a property division must be just and right with regard to the marital property. *See, e.g., Snider v. Snider*, 343 S.W.3d 453, 454-57 (Tex. App.—El Paso 2012, no pet.) (analyzing the just and right division of the marital estate despite a Rule 11 Agreement as to the division of the property); *In re Hallman*, No. 06-09-00089-CV, 2010 Tex. App. LEXIS 1235 (Tex. App.—Texarkana Feb. 23, 2010, pet. filed) (mem. op.) (same); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) ("Unlike other settlement agreements in family law, the trial court is not required to determine if the property division is 'just and right' before approving an MSA.").

The party complaining of the trial court's division of property must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly. *Pletcher*, 9 S.W.3d at 446. We will not disturb the trial court's division unless the record demonstrates "that the division was clearly the result of an abuse of discretion." *Id.* That is, we will not reverse the case unless the record clearly shows that the trial court was acting arbitrarily or unreasonably and that the trial court's error materially affected the just and right

division of the estate.  *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Chavez v. Chavez*, 269 S.W.3d 763, 766 (Tex. App.—Dallas 2008, no pet.).

As stated earlier, the parties entered into an agreement with regard to the division of the community estate, and Eldon did not first complain about the agreement until after the trial court had rendered its final divorce decree.  Nevertheless, Valerie's counsel informed the trial court that the parties had agreed that Eldon would continue to live in the house after the divorce, while paying all related expenses, including the water bill, insurance, and taxes.  In fact, Eldon told the trial court that he would pay all expenses associated with keeping up the house.  The parties also agreed that the house would be sold with the equity proceeds going to Valerie.  However, it was noted that the house was encumbered by a $54,568 mortgage, meaning that Valerie would get the difference between the sales price and the mortgage encumbrance.  The parties estimated that the equity amount would be $18,772, assuming that the house would sell for $73,340.  On the other hand, Eldon was awarded a deep-sea fishing boat valued at $10,550; deep-sea fishing equipment valued at $6,350, hunting equipment valued at $10,570, lawn equipment valued at $1,720, tools valued at $1,250, a barbecue grill valued at $750, and animal mounts valued at $3,075.  Each of these values were contained in the "Proposed Property Division," which was admitted into evidence at the final hearing.

Based on our review of Eldon's appellate complaints and the record evidence, we conclude that Eldon has not demonstrated that the property division was so unjust that the trial court abused its discretion.  *See Pletcher*, 9 S.W.3d at 446; *see also Downer*, 701

S.W.2d at 241-42; *Chavez*, 269 S.W.3d at 766. Accordingly, we overrule Eldon's third issue.

### IV. CONCLUSION

Because it is undisputed that the final divorce decree erroneously states that Eldon must pay 9% interest on the Ferguson loan, and because the record evidence supports this conclusion, we modify the final divorce decree to reflect that Eldon is not required to pay interest on the loan. We affirm the judgment of the trial court in all other respects.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed as modified
Opinion delivered and filed August 2, 2012
[CV06]